Thank you, Your Honors. Good morning, and thank you. Julia Strickland on behalf of Appellant Discover. We are here on appeal from the District Court's February 4, 2022 order granting Perez's motion for partial reconsideration, which in fact, in substance, denied Discover's motion to compel arbitration as to Perez. There are three issues before the Court. Depending on the outcome of the first issue, it's conceivable the Court will not need to reach the second and third issues. Any one of the issues decided in Discover's favor resolves the motion to compel arbitration in Discover's favor. First, the District Court failed to apply the Citibank Arbitration Agreement's delegation clause, which requires disputes regarding the application, enforceability, or interpretation of the arbitration provision to go to the arbitrator. It's a very traditional delegation clause. The cases are well settled. The Schein case followed by the Caremark case in this very circuit, which articulates very clearly the standards for determining whether a question is delegated to the arbitrator. And more recently, the Suskie case, which frankly doesn't add much other than restating what Schein and Caremark hold. So you would agree that the arbitration, the issue involved in potential arbitration, has to be related to the Citibank Arbitration Clause, correct or not? I would agree that that's the case. I think the issue is not whether it has to be related. The question is where that decision is made in the first instance, and we would submit that that decision is actually made by the arbitrator based on the arbitration clause. The hierarchy of decision probably doesn't matter all that much here anyway, but the hierarchy of decision is actually whether the arbitration agreement itself is valid, and that isn't realistically in dispute here. There was some argument at the trial court level about unconscionability. That argument was actually rejected by the trial court, both as to procedural and substantive unconscionability. Even if you assume the opt-out question somehow goes to the procedural unconscionability question on appeal, there's no dispute here about substantive unconscionability, which was a McGill argument, and the court rejected that, and that hasn't been raised again on appeal. So as to the arbitration agreement itself, there's not a legitimate dispute here about whether there is a valid arbitration agreement in force. There's no legitimate dispute here about whether there's an agreement between Citibank and Perez either. No one has even plausibly raised that. I think at the trial court level there was some discussion about mutual assent. Frankly, Judge Ilsen somewhat gave that the back of her hand because there's just no question that there was an agreement in place between them. So now we go to the delegation. Tell me what your argument is about the arbitration clause vis-a-vis the student loan itself and with Citibank and then the discrimination that's alleged against your client. Your Honor, just so I'm clear on your question, your question is basically is it related to that, a variation of that question. We briefed this quite extensively, Your Honor. The Citibank arbitration clause is extremely broad, as we say in our brief, and I'll say again, it is a prototypical broad arbitration provision. I understand that.  Very simply, the Citibank loan agreement, which I think, frankly, at this point is a misnomer. It's really the Discover loan agreement because the entire agreement, lock, stock, and barrel, was assigned to purchase by Discover. The Citibank loan agreement, now Discover, covered broadly all issues arising to or relating from the loan. And again, the loan also is broadly defined. The agreement goes on to say it applies to successors and assigns. When Ms. Perez sought to refinance, which is exactly what her claim arises from, she said, I want to refinance my loan, and I was denied the ability to refinance my loan, which was the Citibank, now Discover loan, because of a discriminatory act. So just so that I'm clear, so what she was asking for is a new loan, in effect, that would replace and have the effect of refinancing the previous loan, and her claim is that the new party, Discover, discriminated against her in connection with her request for that new loan. Why is that related to the old loan? Well, Your Honor, I think the question actually, I think, it makes an effort to come to the answer, which I wouldn't agree with. It's not a new loan. It is a refinance of an existing loan, and it's very clear from the first page of the application for the Discover loan that it is nothing more than taking the old loan, which was the Citibank loan, and refinancing it. Why does it matter that the original loan was from Citibank? I mean, what is that going to tell us that's relevant to the discrimination claim? Because when she went to Discover, Discover was the holder of the Citibank loan at that point. The loan had already been transferred, and what it tells you is that she's there refinancing that loan. Were it not for the Citibank loan, there would have been no application to Discover to refinance that loan. It was a refinance application. Right, but I mean, of course there had to be an original loan to be refinanced, but what difference does it make that that loan was from Citibank versus anywhere else to the analysis of the discrimination claim? Because Discover was the successor, and now, Your Honor, the question you're asking is really scope, right, which is what is the scope of the arbitration agreement, and would it cover, or the validity of the Discover agreement vis-a-vis this loan, which again is subject to the arbitration clause. I mean, what we're here really focused on, and as I said, there are three issues, but the threshold issue here is the question of delegation. There's no dispute, or no legitimate dispute, that the delegation clause is valid. Whether it applies is a question for the arbitrator, which is what we're talking about right now. That goes to the arbitrator. It doesn't go to the court. There's also no question that the Citibank loan, which was taken over by Discover, and we've cited it chapter and verse throughout our briefing, was assigned to Discover. Discover gets all of the benefits and burdens as the assignee. All of that, again, doesn't go to the validity. It all goes to scope, and the scope of the arbitration goes to the arbitrator. It's not for the court to decide. So whether the Citibank loan and the discrimination claim have anything to do with the question is a question for the arbitrator to decide under the delegation clause, which is enforceable. That's really why we're here. I mean, we do brief, and Judge Ilston addressed the question of scope, which I've touched upon a bit, and I'm going to stop in about one second, probably, because I would like to reserve some time for rebuttal. But we contend, and again, we've cited chapter and verse, there's extraordinarily broad language as to scope in the agreement. There are, you know, many, many, many cases addressing that you broadly construe arbitration agreements, you broadly construe the scope language in arbitration agreements, and we would submit that those cases apply here. Lastly, we've briefed extensively the Discover opt-out. We can certainly discuss that again, but I'm going to reserve my time. Thank you very much. Good morning. May it please the Court. My name is Thomas Saenz, and I represent Ileana Perez, who is the plaintiff and appellee in this matter. What makes this case unusual is the existence of two loans, one which was consummated, the other eight years later, that never made it beyond the initial application stage as a result of the discriminatory policy that barred anyone from consideration who was not a citizen or a lawful permanent resident. That second loan was never consummated. There are similarly two contracts, inconsistent, not the same by any means. So if supposing Citibank was still the banking issue, and your client came to Citibank and said, I want to refinance my loan, and Citibank said, no, we're not going to allow it because you're not a citizen or whatever, do you agree, then, arbitration would be mandatory in that situation? No, Your Honor. But first, there are a couple of unknowns. I don't know whether Citibank is the same entity. I'll posit it in my hypothetical it's the same entity. So whether they have the same arbitration contract, which is not the case here because the loans originated with different banks. No, my question, what I'm trying to get at, is your adversary is arguing that this is not really in any sense a new loan. It is a refinancing of the old loan, assuming for the sake of argument that Citibank was still involved, so we take out the transfer to Discover. Why do you say, in effect, it's a new loan? So, Your Honor, taking out the fact that these were at some point two different banks, still are, except this... I understand. That's why my hypothetical was designed to take that out. Putting that aside, it would still be separate loans because despite the mischaracterization as refinancing by Discover, this is a consolidation loan, which under their own scheme is not a refinancing. And at the stage that the discrimination occurred, Abinishio, basically, indeed, the other plaintiff in this case that's not before this court, had an automatic computer-generated denial of his loan when he indicated he was not a citizen or a lawful permanent resident. So this is a claim that comes up at the very initiation of the consolidation loan application before Discover Bank ever looked at what are the loans or loan that will be used, will be paid off, if you will, by this consolidation loan. So there's no connection between the two, even if they were the exact same bank because the bank never got to the point of evaluating in any way the prior loan that would be, in effect, paid off if the consolidation loan were received. And that's what makes this case unusual. We have these two very separate loans with two very different arbitration contracts in them separated by eight years and a claim that relates to a policy that up front, before any consideration of the merits of granting the loan, a policy that requires denial at the very beginning on the basis of someone's citizenship or lack of lawful permanent residence. One of these arbitration contracts, as your Honours know, has an opt-out clause. I start there because that contract, the Discover contract as it's been characterized, is the primary contract in relation to the loan being challenged where the policy was applied to deny any consideration on the basis of citizenship and immigration status. That opt-out clause, which Ms. Perez has now elected to use, has very specific language. And that language relates in part to the underlying issue of transference between these two contracts and two loans. It includes, as you all know, a savings clause that says even if you reject this arbitration provision with regard to this loan, you are still obligated to comply with arbitration provisions you may have with us with respect to other loans. That savings clause relates to the underlying issue of transference from one contract to the other loan. In this case, it deals with can the opt-out of the Discover and therefore the ending of the Discover arbitration contract transfer to the pre-existing Citibank arbitration contract? And the savings clause says no. No, this has no effect on your obligations with respect to another loan and another arbitration contract. But at the same time, Discover is here arguing to the court that a similar transference in the other direction should somehow be implied and inferred, that the arbitration contract from Citibank should transfer and apply to Discover even though Ms. Pettis has now opted out, rejected arbitration with respect to that loan, the loan at issue in this case, the Discover loan. Since this is a matter of contract, we look at the specific language. The savings clause says that this will not affect your other rights or responsibilities under this note or your obligation to arbitrate disputes under any other loan as to which you and we have agreed to arbitrate disputes. That reference to other loan should influence how the court resolves this question. The reference to other loan recognizes a distinction between that loan and this loan and suggests that this loan is now fully covered by the opt-out, the rejection, that is permitted by the arbitration contract with respect to the Discover loan. So that loan, opted out, rejected, completes the picture with respect to that loan that is at issue under Ms. Pettis' discrimination claim in this case. The savings clause merely says that resolution of arbitration with respect to the Discover loan does not affect your obligation to arbitrate issues under the other loan. Fortunately, this construction, again, I emphasize that they could have worded that savings clause differently. This is a contract of adhesion. Discover drafted it. They could have said simply that this rejection has no effect on any other arbitration agreement between us. Full stop. They could have said you may still be obligated under another agreement to arbitrate even with respect to this loan. They didn't either. It says references dispute under any other loan. That's what should motivate, should determine whether that Citibank arbitration agreement can apply or be transferred, if you will, to this separate Discover loan with a separate arbitration agreement whereby all lights Ms. Pettis has decided as permitted under the contract to reject the arbitration option. I first want to point out that that rejection should apply to all claims. The notion that somehow it would only apply prospectively is not consistent with the language of the rejection clause. First of all, again, a contract of adhesion drafted by Discover. They could have specified that this rejection only applies to claims that have not approved yet. Instead, there's no such language in the contract drafted by Discover. Second, the language itself is inconsistent with any implication that this would only apply to future disputes. First, by including in it the description of claims now or hereafter existing, the inclusion of the word now would be inappropriate if, in fact, the arbitration agreement could not be rejected with respect to claims now existing. But perhaps more important, Discover worded the clause as a rejection of arbitration. You can reject arbitration. They could have used other terms, like you can conclude arbitration obligation, you can terminate your arbitration obligation, you can sunset your arbitration obligation. They didn't use any of those terms. They used the term reject, which suggests a wholesale, complete rejection of arbitration with respect to all claims, those existing now, and those that may approve in the future. You add to that that there was, and still is, ambiguity about the opt-out clause itself. Initially, Ms. Perez, her counsel, and even initially the district court concluded that the wording within 30 days after consummation of your loan meant that there was a limited 30-day period to reject arbitration did not begin until the consummation of the loan and concluded 30 days later. In fact, it was Discover, in oral argument, in the district court, that disabused both the plaintiff, her counsel, and the district court of that interpretation to suggest and then admit that even though her loan was never consummated, she could currently opt out through rejecting the arbitration clause. With that ambiguous period, again, drafted by Discover, of when you can reject, it would be unjust to then determine that you should imply terms that it only extends from when the rejection is submitted going forward. Finally, with respect to the claim involved in this case, it would be, as a practical matter, really impossible for Ms. Perez to have the claim involved here taken out of the arbitration clause if their implied language were actually included. Why? Because this claim relates to a policy that goes into effect immediately when the application is submitted. Indeed, as I said with respect to another plaintiff, there's a computer-generated automatic rejection at the very beginning. In that context, it would be impossible to opt out under this clause in time to affect claims like this one relating to a policy that requires an upfront discriminatory rejection of any application from someone who is not a citizen or lawful permanent resident. So that, I think, resolved that issue about the perspective alone application of this rejection clause. But back to the Citibank agreement, the issue, again, being one of transference. Savings clause says you cannot transfer what occurred with respect to Discover back to Citibank, and yet now Discover would like to argue that Citibank does, in fact, transfer over to a loan that Ms. Perez believes that she has rejected arbitration with respect to any disputes under that loan and contract. That is an argument this Court should reject. First of all, it's important to note that the connection between these two loans is tenuous at best. Even the best cases they come up with require a significant relationship, quote-unquote, between the dispute and the contract. That does not exist here. The only connection here, and tenuous at best, is Ms. Perez's subjective intention to use the proceeds of the Discover loan to pay off the Citibank loan. I say subjective because at the point her application was rejected, Discover had not begun to consider what is the underlying loan that you would use this consolidation to pay off. It was not before them because they rejected her application right up front under the policy being challenged. So if that is the connection, you can imagine the absurd consequences of concluding that somehow there's a contract formed and covered by the FAA that would deem connected someone's subjective intent to use the proceeds of a separate transaction, in this case a consolidation loan, to pay off the preexisting loan. Hypothetically, for example, if a borrower went out and had a car accident with a Discover employee on duty, and in the course of that litigation about that auto accident, indicated perhaps in a mediation that the borrower would take the proceeds of the tort case and use it to pay off the loan that Discover has with her, could Discover then assert that somehow that tort action has to be thrown out of court and sent to arbitration? Has the same subjective intention expressed to Discover to use the proceeds from that separate transaction, car accident with a Discover employee? That's an interesting hypo, but let's take a different kind of hypo. Supposing your client had just gone to Discover and said, I want to change the terms of the prior loan, so I'll have an extra two years to pay it off. And they had said no because we don't allow someone in your position who's not a citizen or whatever to change the terms of the loan. Are you saying the arbitration clause in the Citibank would not apply? No, Your Honor. In that hypothetical, the arbitration clause would apply. It was directly related to the loan, directly related to servicing and paying the loan under its terms. There was no competing clause as there is here with the consolidation loan. So in that circumstance, this would apply. But that's not what's going on here. Oh, I understand. I just wanted to make sure I understood where you're drawing the line. The only connection here is the subjective intention to use the proceeds to pay off the prior loan. I see my time is up. So with that, I'll simply urge the court to affirm and allow this case to move forward in district court. Thank you. Thank you, counsel. We'll hear from Byron. Thank you. Let me try to address some of the argument that's come up as well as some of the court's prior questions. Although it relates to the delegation question, and this is a question for the arbitrator, you had asked about the relatedness, and this came up again in argument. Notably, plaintiff actually, in the second amended complaint, paragraph 18, specifically talks about the Discover application and loan as a refinancing of the Citibank loan. If they truly believe these were two separate loans, they need not have included those allegations. They could have just said, she applied for a loan with Discover, the end. That's not the context here, and it's not a car accident, and it's not a third-party situation. The cases relating to consolidation loans where the courts have found them to be separate transactions and independent, again, not the issue before the court here. This would all go to the arbitrator, but are cases in which there is a third-party lender. I mean, we think of consolidation loans. You see them advertised. I've got six credit cards, and I'm going to a new lender, and I want a new loan to pay off all my credit cards. That's not this case. Well, it is in a sense because it's not a strict refinancing of the student loan. It's a consolidation loan, so she's asking for new money to pay off the old loan and to pay off for other purposes. Well, consolidation is really a misnomer. It's really a repayment and refunding, essentially, but it's the exact same loan. Your Honors asked the question, say you had gone to Citibank in the first instance and asked them to do this. Would that have changed the analysis? Well, that's exactly the situation here because DISCOVER stands in the shoes of Citibank as a matter of contract and as a matter of law. And again, I mentioned the consolidation cases. Then, as I said, we don't need to get to the DISCOVER agreement at all. In fact, the case should be decided in the very first step of the analysis, which is these questions are actually delegated to the arbitrator. But your position is, as I understand it, correct me if I'm wrong, is that the DISCOVER loan application and the arbitration clause that applies in that was the operative arbitration clause, at least initially. That isn't actually our position. Our position... So do you think that the DISCOVER arbitration clause has nothing to do with this case? Our position is that under either clause, there was a requirement to arbitrate, and we still believe that the DISCOVER clause would require arbitration. But it doesn't matter which... Why is it not a separate agreement? It's not a separate agreement because there is a successor and assigned provision, and throughout the agreements, the agreements are replete with DISCOVER having the benefit of the Citibank agreement. And with respect to DISCOVER, DISCOVER is stepping into the shoes of Citibank. So supposing the DISCOVER loan had been granted and then a future dispute arose, and you're saying that the Citibank arbitration clause would then apply and not the DISCOVER arbitration clause? We would... Neither one of them could apply, but at that point, potentially, the DISCOVER clause could supplant the Citibank clause once that agreement is actually consummated. And therefore, if you had the right to opt out of arbitration under the DISCOVER, you could avoid arbitration on your... in that situation, right? I think it depends on the nature of the dispute. So if it's a dispute that is unique to the DISCOVER loan, conceivably that's true, but that's not the situation here. It came to us as a refi. The Citibank loan was before that. Isn't the dispute here unique to the DISCOVER loan because the allegation is that DISCOVER, not Citibank, but DISCOVER exercise discrimination of a forbidden kind, and therefore it was unique to DISCOVER. But at the moment at which that happened, the Citibank loan was still the operative loan. So let me touch on a few other matters in my very limited time here. There was an argument about this language about the now or hereafter existing, which is a bit of a chopping exercise of the language that's in the general arbitration clause. To be candid, I find personally it very hard to find that argument, but it isn't actually the language that's in the opt-out provision, and so it has no bearing. What counsel has tried to do is take the first sentence of the DISCOVER arbitration agreement and cut it up in pieces and recraft it to somehow apply to the opt-out provision, which it doesn't. So we would just argue that that really is irrelevant here. Then counsel argued that rejection in this context means something other than termination. Rejection in this context means nothing other than termination. It is the end of the agreement by that opt-out. And lastly, the notion that there would have to be a contemporaneous opt-out is an important thing to think about because perhaps that is the case, but it wasn't the case here, and the court doesn't need to go there. She applied for the DISCOVER loan in August of 2018. The allegedly discriminatory action with respect to the loan relationship did not incur until August. I'm sorry, until October. In the argument below, as I understand it, the court put the question, let's say Ms. Perez wrote to you today, would that be an effective opt-out? And the answer was yes, but that wouldn't resolve the issue because we still have the Citibank loan, which our position is enforceable. And then the district court, in following up on that, it stated in its opinion the, quote, DISCOVER took the position the agreement was not procedurally unconscionable because Perez could have, dash, and still could, dash, opt-out of binding arbitration, close quote. So aren't you stopped from saying now that she can't, that her opt-out is defective? No, Your Honor, we addressed this extensively in the briefing, and the answer is no because no one challenged her right to opt-out. The question as to the opt-out is entirely the time period to which it applies. In other words, does it apply to pending or accrued claims? And that issue was never addressed, frankly, by any party in any of the briefing. Ms. Perez and her counsel knew for multiple years before the arbitration motion was heard that there was an opt-out. Never once did they actually raise the question as to the timing for that opt-out. Oh, wait a minute. I'm still missing. I know you've briefed this, but I still don't quite understand. When your counsel says below in answer to a question from the court, the question is, let's say Ms. Perez wrote to you today, would that be an effective opt-out? And the answer was yes. Going forward. But he didn't say that. Your Honor, he said it would be an effective opt-out. The answer was yes, but it would only be as to going forward claims. It was an oral argument answering a question. Well, correct, but then Judge Elston based her decision on that representation, and that's where it gets a little tricky because then your argument now is really he didn't mean what he said and he didn't correct the court. With all respect, I would beg to differ with your Honor. The question and answer were correct. Would that be an effective opt-out? Yes, it was an effective opt-out, but it's an effective opt-out as to future claims because if not, you have an illusory agreement, which just going back to my point before we got into this line of questioning, she actually had two months in which to opt-out. And the notion that, you know, we're trying to enforce a contemporaneous opt-out, first of all, that happens all the time. We all enter into agreements online where we check boxes and opt-out of things, contemporaneous with entering into the agreement. But here that wasn't the case in any event. She had two months in which to opt-out, and she didn't. Frankly, counsel didn't even think of this until Judge Ilston raised it. Then they took three weeks to send an opt-out, and then we responded by saying thank you for your opt-out, but it doesn't apply to this claim. It applies to claims in the future post-dating the opt-out. Okay.  And we thank you very much. The case has just already been submitted for decision. Thank you all for your arguments this morning, and we'll be in recess. All rise.
judges: THOMAS, THOMAS, Rakoff